IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Charles A. Leblanc, #66186-079, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>M. Pettiford, Warden, FCI Bennettsville, )<br>)<br>Respondent. )<br>) | Civil Action No. 6:06-1194-GRA-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to Title 28, United States Code, Section 2241.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**FACTS PRESENTED**

The record reveals that the petitioner is currently incarcerated at the Federal Correctional Institution ("FCI") in Bennettsville, South Carolina, serving a 264-month term of incarceration imposed by the United States District Court for the Southern District of Texas for possession of a firearm by a felon in violation of 18 U.S.C. §924. *See United States v. Leblanc*, 62 F.3d 393 (5th Cir. 1995), and 1995 WL 17110981. The sentence was imposed on November 7, 1994, and his anticipated release date is August 4, 2013, via Good Conduct Time release.

The petitioner claims that the Bureau of Prisons has unlawfully revoked 13 days in good time credits in violation of the Fifth and Eighth Amendments. On November 20,

2005, the Bureau of Prisons imposed sanctions on the petitioner, including the sanction of disallowing 13 days of good time credits, for the possession of tobacco at FCI Bennettsville. There is an Institution Supplement in place at FCI Bennettsville that provides that smoking is prohibited at that institution and tobacco is not allowed.  The policy states: "FCI/SPC Bennettsville is a tobacco free institution with no designated smoking areas for inmates" (resp. m.s.j., ex. 1, BEN 1640-04).  Through the Bureau of Prisons internal appeals process, the petitioner appealed the disallowance of good time credits, and the Bureau of Prisons affirmed (resp. m.s.j., ex. 2-6).  Thereafter, the petitioner filed this habeas petition asking the court to reverse and expunge the disciplinary action and restore the 13 days of good time credit.

In his petition, the petitioner does not contend that he did not possess tobacco on November 20, 2005.  Instead, he claims that the sanction imposed, loss of good time credits, was unlawful under the Fifth and Eighth Amendments because he did not have "fair notice" that the possession of tobacco was prohibited. Specifically, the petitioner argues that the applicable prison rules prohibiting tobacco are so vague that a person of ordinary intelligence would have to guess at their meaning (habeas pet. ¶¶ 20, 22).

On August 11, 2006, the respondent filed a motion for summary judgment.  By order filed August 14, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  The petitioner filed his response to the motion on August 24, 2006.

## APPLICABLE LAW AND ANALYSIS

The respondent has moved for dismissal of this action pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment pursuant to Rule 56.  As matters outside the

pleadings have been presented by the respondent and have not been excluded by this court, the motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) shall be treated as one for summary judgment pursuant to Rule 56.  *See* Fed.R.Civ.P. 12(b)(6).

Rule 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of

3

the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The leading case on inmate discipline is *Wolff v. McDonnell*, 418 U.S. 539 (1974). In *Wolff*, the Supreme Court held that the Due Process Clause is satisfied in prison discipline hearings when the inmate receives a finding from an impartial decision maker, advance written notice of the charges, a conditional opportunity to present documentary evidence and testimony from witnesses, and a written statement of the evidence relied on and the reasons for the disciplinary action. *Id.* at 564-66. The Bureau of Prisons rules embodying disciplinary procedures are codified at 28 C.F.R. § 541.10 *et seq*. These rules and regulations were drafted to comply with the constitutional requirements of due process in prison discipline matters.

The record of the hearing at issue here reflects that the due process requirements of *Wolff* were observed (resp. m.s.j., ex. 6, DHO Report). The petitioner was given advance written notice of the charge more than 24 hours before the hearing before the Discipline Hearing Officer ("DHO") (resp. m.s.j., ex. 6, § I). The petitioner was offered the opportunity to present evidence in the form of documents or witnesses and to have the assistance of a staff representative (resp. m.s.j., ex. 6, §§ II and III). The petitioner declined to call witnesses or to utilize a staff representative (resp. m.s.j., ex. 6). The DHO Report reflects that the petitioner appeared and made a statement to the decision maker (resp. m.s.j., ex. 6, § III.B). The report further reflects the evidence relied upon and the reasons for the decisions and the sanctions imposed. The evidence included that the petitioner was

4

randomly pat searched and tobacco was found in his right front pocket. The petitioner also admitted to possession of tobacco (resp. m.s.j., ex. 6, §§ V-VII).

In *Superintendent, Massachusetts Correctional Institution v. Hill*, 472 U.S. 445 (1985), the Supreme Court set out the constitutional evidentiary standard to be used when courts review prison discipline decisions. It held that the Due Process Clause is satisfied if there is "some evidence" to show that the inmate committed the offense. *Id*. at 455. The Court declined to adopt a more stringent evidentiary standard as a constitutional requirement, stating:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact.

*Id.* at 456. The "some evidence" standard is a lenient one, requiring no more than "a modicum of evidence," and is met if there is any evidence in the record that could support the board's decision. *Id.* at 455-56. This standard requires "only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). As the Supreme Court noted in *Hill*,

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

472 U.S. at 455-56. Upon review of a disciplinary proceeding, the court should determine only whether the DHO's decision to revoke good time credits has some factual basis. *Hill*, 472 U.S. at 456; *McPherson*, 188 F.3d at 786.

Review of the records of the disciplinary action at issue in this case reveals that there was "some evidence" to support the DHO's decision (resp. m.s.j., ex. 6, DHO

Report, § V). The DHO detailed the evidence he relied upon, which included the petitioner's admission that he possessed tobacco and the reporting officer's statement (resp. m.s.j., ex. 6). Based upon the foregoing, the claim fails.

The petitioner further claims that the BOP revoked his good time credits in violation of the Eighth Amendment (habeas pet. ¶ 17(a)). The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. The Eighth Amendment reaches official conduct including excessive sentences and inhumane treatment while in prison, as well as conditions of confinement. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The "Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.* The analysis varies according to the nature of the alleged constitutional violation. *Id.*

As argued by the respondent, the petitioner's claim that the revocation of his good time credits violates the Eighth Amendment does not fit neatly within this Eighth Amendment framework. The Eighth Amendment is intended to ensure that our penal system satisfies "'contemporary standards of decency.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4 Cir. 1995) (quoting *Hudson v. Mc Millian*, 503 U.S. 1, 8 (1992)). It is not intended to garner judicial review for routine disciplinary sanctions such as that imposed on the petitioner for his possession of tobacco in a tobacco-free facility. Prison administrators must be accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

District courts have dismissed similar Eighth Amendment claims by inmates as a matter of law. In *Carroll v. Simmons*, 89 Fed. Appx. 658, 661-62 (10th Cir. 2004), the Tenth Circuit Court of Appeals summarily held that "loss of certain privileges and good-time

6

credits due to the refusal to participate in a treatment program designed to rehabilitate sex offenders does not rise to the level of cruel and unusual punishment." In *Beste v. Anderson*, Civil No. 05-2907, 2006 WL 1581360, *3 (D. Minn. 2006), the district court held that as a matter of law the allegation that the loss of good conduct time constitutes cruel and unusual punishment "falls far short of the level of conduct prohibited by the Eighth Amendment." As held in these unpublished opinions, the sanction of loss of good time credits, particularly such a limited amount of credits, is typical, not unusual. This mild sanction does not impose the sort of hardship the Eighth Amendment is intended to reach. Accordingly, the petitioner has failed to state a claim pursuant to the Eighth Amendment.

The petitioner also alleges under the Fifth Amendment Due Process Clause that the applicable prison regulations and policy statements do not give "fair notice" that the possession of tobacco is prohibited at FCI Bennettsville (habeas pet. ¶ 20). He also claims that the prison rules are so vague on the subject that "people of ordinary intelligence must guess" at the meaning of the rules (habeas pet., ¶ 22). It is significant that the petitioner does not argue that he believed he was allowed to possess tobacco at FCI Bennettsville. "Due process undoubtedly requires certain minimal standards of specificity in prison regulations. . . ." *Meyers v. Alldredge*, 492 F.2d 296, 310 (3rd Cir. 1974). However, given the differences in a prison environment and ordinary society, the courts have applied a relaxed version of the vagueness doctrine to prison regulations. *Id.* As the Sixth Circuit Court of Appeals explained in *Wolfel v. Morris*, 972 F.2d 712, 717 (6th Cir. 1992),

> Due process undoubtedly requires certain minimal standards of specificity in prison regulations, but we reject the view that the degree of specificity required of regulations is as strict in every instance as that required of ordinary criminal sanctions. This results from the fundamental difference between normal society and prison society. The maintenance of strict security and discipline, with its unfortunate but unavoidable circumscription of an inmate's freedom to act, is essential to safe and efficient prison administration. As such, it is nearly impossible for prison

7

> authorities to anticipate, through narrowly drawn regulations, every conceivable form of misconduct which threatens prison security.

*Id.* (quoting *Meyers v. Alldredge*, 492 F.2d 296, 310 (3rd Cir.1974)). "Because 'legalistic wrangling' over the meaning of prison rules 'may visibly undermine the [prison] administration's position of total authority,' federal courts have deferred to the interpretation of those rules by prison authorities 'unless fair notice was clearly lacking.'" *Adams v. Gunnell*, 729 F.2d 362, 369 (5th Cir. 1984) (quoting *Hadden v. Howard*, 713 F.2d 1003, 1008 (3d Cir.1983)).

The petitioner claims in part that because the Admissions & Orientation Handbook does not specifically state that tobacco is contraband, the applicable regulatory scheme as applied is vague. However, as the Fourth Circuit has recognized, prison regulations need not exhaustively list all contraband, but may instead rely on a scheme which prohibits everything not specifically approved. *Gaston v. Taylor*, 946 F.2d 340, 342 (4th Cir. 1991) (recognizing constitutionality of rule that prohibits possession of any unapproved property); *United States v. Chatman*, 538 F.2d 567, 569 (4th Cir. 1976) ("Pragmatically speaking, it would be virtually impossible for a single statute to catalogue the numerous items which must be prohibited in the interest of prison safety and security.")

In support of his claim that the applicable policies are vague, the petitioner references the fact that Institution Supplement BEN 5580.06, which implements a national Program Statement with the same number, allows an inmate to possess on transfer property specified on the Inmate Personal Property List made a part of the national Program Statement 5580.06. The petitioner notes that the Inmate Personal Property List originally made a part of Program Statement 5580.06 back in August 1999 lists tobacco as an authorized possession. However, he fails to note that Institution Supplement BEN 5580.06, dated November 16, 2004, incorporates an institution-specific Inmate Personal Property List

8

post-dating the national program statements and institution policies designed to reduce the effects of second-hand smoke. This Institution Supplement 5580.06 is not vague – it is a short, concise list of what an inmate may possess at FCI Bennettsville, and it specifically does not include tobacco (resp. m.s.j., ex. 9, 10).

This is not a case where fair notice is lacking. The FCI Bennettsville Admission & Orientation Handbook (resp. m.s.j., ex. 11) includes the list of approved inmate personal property, and the Handbook does not list tobacco, as the petitioner concedes (habeas pet. ¶ 23). He further concedes that there is an Institution Supplement, BEN 1640.06 (resp. m.s.j., ex. 1), that specifically provides that "FCI/SPC Bennettsville is a tobacco free institution with no designated smoking areas for inmates" (habeas pet., ¶ 26). Finally, BEN 5580.06, the Institution Supplement which implements Program Statement 5580.06 on which the petitioner hangs his charge of vagueness, includes an updated institutional list specifying all approved property, and it does not include tobacco (resp. m.s.j., ex. 9). The petitioner reviewed and signed for the Admission & Orientation Handbook upon transfer to FCI Bennettsville (resp. m.s.j., ex. 11, 12), and he had access to both Institution Supplements at the facility. These three institution-specific documents are individually and collectively clear and sufficient to put the petitioner on notice that he could not possess tobacco. Accordingly, this claim also fails.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the respondent's motion for summary judgment be granted.

January 11, 2007

Greenville, South Carolina

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

9